# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | : | CRIMINAL ACTION |
| of AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| RUBEN BORIA | : | No. 07-151-2 |

## MEMORANDUM

PRATTER, J.                                                                                                                         NOVEMBER 4, 2010

A jury convicted Ruben Boria of one count of conspiracy to possess with intent to distribute 5 kilograms or more of a controlled substance, that is, 100 kilograms of cocaine; and one count of aiding and abetting the possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. However, on May 13, 2008, this Court granted a Motion for Judgment of Acquittal, holding that a reasonable jury could not find that Mr. Boria knew the actual purpose of the conspiracy in which he was alleged to have participated. The Government appealed the District Court's judgment of acquittal, and on January 26, 2010, the Court of Appeals for the Third Circuit reversed this Court's decision, holding that "the evidence presented at trial could lead a rational trier of fact to find Boria knew a controlled substance was involved in the transaction, particularly his co-conspirator's statement regarding his role." *United States v. Boria*, 592 F.3d 476, 486 (3d Cir. 2010).

When Mr. Boria filed his Motion for Judgment of Acquittal following his trial, he also moved, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a new trial. While the appeal of the Court's ruling on the request for judgment of acquittal was pending, the Court had not yet ruled on this Rule 33 motion. For the reasons set forth below, that motion will now be denied.

**FACTUAL BACKGROUND**

On February 5, 2007, a man named Marcus Diaz arrived in Philadelphia driving a tractor-trailer which contained 100 kilograms of cocaine hidden among boxes of fruit. On the same day, Jose Alvarado, a Drug Enforcement Agency ("DEA") informant, received a phone call from his long-time friend Miguel Morel, who was searching for a garage in which the tractor-trailer could be parked for unloading. Mr. Alvarado – who had previously assisted Mr. Morel with Mr. Morel's drug transportation activities – soon met with Mr. Morel and four others, Mr. Boria not among them. Mr. Alvarado told Mr. Morel that he had been unable find a garage, but suggested an overnight parking spot. He watched the truck overnight, during which time he maintained communication with Mr. Morel. At some point during the night, Mr. Alvarado was able to inform law enforcement about the truck load of cocaine.

The next morning, Mr. Alvarado returned to the parking lot to take the driver, Mr. Diaz, to breakfast. After the two men arrived at a diner, Mr. Alvarado received a phone call from Mr. Morel, who informed Mr. Alvarado that he (Mr. Morel) had sent someone to take the tractor-trailer to a garage for unloading. At trial, Mr. Alvarado testified that Mr. Morel told him that a man who would identify himself as "Ruben" "was supposed to take the tractor-trailer from [Mr. Alvarado] and take it to a garage to unload the drugs that were in the back of the tractor-trailer."

Mr. Alvarado and Mr. Diaz returned to the parking lot, where they were approached by Mr. Boria, who identified himself as "Ruben" and confirmed that he had been sent by Mr. Morel. Mr. Diaz then climbed into the driver's side of the tractor-trailer, and Mr. Boria climbed into the passenger's side. They drove away in the truck, and Mr. Alvarado followed them at Mr. Morel's request. On Aramingo Avenue, the truck stopped in a K-Mart parking lot. Mr. Alvarado got out

2

of his car and asked Mr. Boria why he had stopped, telling him that they were in a "hot area." Mr. Boria was on his cell phone, and when he hung up, Mr. Alvarado asked him where he was heading. Mr. Boria told Mr. Alvarado that he was driving to a garage in North Philadelphia, but that he needed to wait for someone who would open the truck.

When the truck pulled out of the parking lot, it was stopped by the police, who had been observing the truck since receiving Mr. Alvarado's tip. The police conducted a lawful search of the truck after a K-9 unit alerted to the presence of contraband. Officers recovered a cell phone and $16.00 cash from Mr. Boria. Mr. Boria's phone continued to ring after the police stop, and throughout the time when officers were searching the tractor-trailer. After a lengthy search, the police located 100 kilograms of cocaine hidden in boxes, which themselves were hidden in the middle of the trailer within pallets of mostly rotten fruit.

**LEGAL STANDARD**

A district court can "order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quotations and citations omitted). Thus, "[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted); *see also United States v. Miller*, 987 F.2d 1462, 1466 (10th Cir. 1993); *United States v. Bertoli*, 854 F. Supp. 975 (D.N.J. 1994) (power to grant new trial should only be exercised sparingly).

DISCUSSION

As noted above, Mr. Alvarado testified that Mr. Boria's role was to "take [the tractor-trailer] to a garage to unload the drugs that were in the back of the tractor-trailer," and also testified on cross-examination that according to Mr. Morel, Mr. Boria was responsible for "taking the truck from [his] hands to take it to another garage to unload it" and for "tak[ing] the driver of the tractor-trailer to finish off what needs to be done inside the truck."

In reviewing this Court's decision to grant Mr. Boria's Rule 29 motion, the Court of Appeals determined that Mr. Alvarado's testimony imputes to Mr. Boria knowledge that the tractor-trailer driven by Mr. Diaz contained drugs, and thus held that a rational jury could find beyond a reasonable doubt that Mr. Boria knew that he was transporting a controlled substance. *Boria*, 592 F.3d at 485. In light of this appellate court holding, this Court cannot now find that "there is a serious danger that a miscarriage of justice has occurred" or that an innocent person has been convicted. *See Johnson*, 302 F.3d at 150 (setting forth the Rule 33 standard).

In addition to challenging the sufficiency of the evidence, Mr. Boria argues that the District Court erred in failing to admit a DEA-6 interview report that memorialized a task force officer's interview with Mr. Alvarado. At trial, the Court held that this report was inadmissible hearsay, inasmuch as it was one witness's account of out-of-court statements of another witness, and it was offered for the truth of those statements. The Court remains convinced that this ruling was correct, and that the DEA-6 report does not fall within any hearsay exception found in Rule 803 of the Federal Rules of Evidence.

The Court recognizes that Mr. Boria sought to introduce the DEA-6 report to show that the report did not record Mr. Alvarado saying what Mr. Alvarado said at trial – namely, that he

4

understood Mr. Boria to be responsible for unloading the tractor-trailer. But at trial, Mr. Boria's counsel was allowed to cross examine the officer who authored the report, and she conceded that it did not record the statement in question. Mr. Boria's counsel asked: "And just so it's perfectly clear, any reference to Mr. Boria participating in that is not reflected anywhere in your three-page DEA report?" Thus, the written report itself was redundant evidence, even if it was otherwise admissible. The jury, in convicting Mr. Boria, was able to consider the uncontested fact that the report did not make reference to Mr. Alvarado indicating that Mr. Boria would be responsible for unloading the truck – a fact which, it should be noted, did not directly controvert any of Mr. Alvarado's trial testimony.[1]

**CONCLUSION**

For the reasons set forth above, Mr. Boria's motion for a new trial will be denied. An order to this effect follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[1] This means that even if the Court's evidentiary ruling were incorrect, that it would have been a harmless error, since the non-admission of the DEA-6 report is very unlikely to have contributed to Mr. Boria's conviction. *United States v. Lee*, 612 F.3d 170, 189 (3d Cir. 2010) (*citing United States v. Ali*, 493 F.3d 387, 392 (3d Cir. 2007) ("the test for harmless error is whether it is highly probable that evidentiary error did not contribute to conviction")).